## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-14481-CIV-MARTINEZ/LYNCH

**PRISON LEGAL NEWS,**
**a project of the Human Rights**
**Defense Center, a not-for-profit,**
**Washington charitable corporation,**

        **Plaintiff,**

**v.**

**KENNETH J. MASCARA, in his**
**official capacity as Sheriff of**
**St. Lucie County, Florida,**

        **Defendant.**
_____/



FILED by _____ D.C.

APR - 8 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON PLAINTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION [D.E. #4]

    **THIS CAUSE** having come on to be heard upon the aforementioned motion and this

Court having reviewed the motion, the response and reply as well as all attachments made

by the parties to their pleadings, this Court recommends to the District Court as follows:

    1.    The Plaintiff is a not-for-profit Washington charitable corporation with its main

office in Lake Worth, Florida, as set forth in its motion.  The Plaintiff distributes a monthly

journal of corrections news and analysis as well as certain books about the criminal justice

system and legal issues in general.  The Plaintiff challenges the Defendant's "postcard only

policy" concerning incoming legal mail to the St. Lucie County Jail.

    2.    The policy in question has been attached by the parties to their various

pleadings.  The initial policy attached to the Plaintiff's Motion For Preliminary Injunction is

dated June 15, 2010.  This policy, which neither party disputes is the correct policy,

requires all incoming mail to be by way of postcards meeting the size criteria set forth in the memorandum/policy.  The effective date of the "postcard only policy" was August 2, 2010 as is reflected in that memorandum/policy.  Further, the policy states that, with the exception of legal mail, all incoming mail must be in the form of a postcard which can be visually scanned by staff members.  The policy states that inmates who are denied correspondence are given written notification which will include the reasons for the denial.  Further, the policy states that incoming mail will be received and reviewed by staff members to verify that the inmate is still incarcerated.  All stamps or unusual marks will be cut and torn from the postcard.  Any postcards with stickers or labels will be returned to sender to eliminate the possibility that any items may have been treated with a drug.  Postcards altered from their original form will not be delivered and will be returned to sender.

3.    The policy also directed that magazines, paperbacks, or hardcover books cannot be received through the mail.  Paperback books and magazines can be received by request through the jail's leisure library.  This provision is a provision which this Court views to be the most pertinent to the Plaintiff's position as a media/news dissemination non-profit.  By the very definition that the Plaintiff places in its motion, it distributes a monthly journal as this Court previously stated, together with certain books about the criminal justice system and legal issues.  The Plaintiff does not complain nor set forth any specific instances of personal correspondence which has to be sent by letter form to inmates.  Nevertheless, the changed policy, which this Court will review later herein, does exempt the Plaintiff and similar media publishers from the postcard only policy.

2

4.     As the pleadings indicate, subsequent to this action being filed, the Defendant amended its policy as of January 2014. This amended policy is attached to the Defendant's response to the Motion For Preliminary Injunction.  This amended policy reflects that general correspondence is considered to be between an inmate, family members, or other persons. This policy encourages correspondence. Further, the policy reiterates that, with the exception of privileged mail and permissible publications, all incoming mail must remain in the form of a postcard to be visually scanned by staff.

5.     The policy then recites that any incoming correspondence which is denied to an inmate will result in a written notification to that inmate which would include the reasons for denial.  Inmates may appeal the denial via an inmate request form to the facility commander.  The amended policy reiterates the requirements concerning removal of postage stamps or other labels from any incoming postcards.

6.     The amended policy then exempts privileged mail which is defined to be mail from attorneys, courts, public officials, governmental agencies, and the news media.  The amended policy states that this "privileged mail" does not need to be in the form of a postcard.  It shall be opened only to determine that it is privileged mail and contains no contraband.  It must be opened in the presence of the inmate according to the amended policy.

7.     The amended policy also exempts publications such as the books, magazines, and periodicals which the Plaintiff seeks to send to inmates at the Defendant's facility.  Those publications are set forth in subparagraph (E) of the amended policy.  It reflects that select periodicals, books, and newspapers are provided at no charge to the inmates through the facility leisure library.  If an inmate wants a publication not offered in

3

that library, the inmate may make arrangements to purchase such a publication directly from the publisher or commercial distributor. Further, the amended policy reflects that publications will not be disapproved solely because its content is religiously, philosophically, politically, or socially unpopular. Published materials from outside must be sent directly from the publisher or vendor approved by the Defendant's Director of Detention and be at the inmate's expense which must be prearranged for payment. Published materials which are found to be detrimental to security, order, disciplinary, or rehabilitative interest of an inmate in any facility may be refused. The amended policy then sets forth specific publications which would be rejected in paragraph (E)(6).

8.      The amended policy then sets forth procedures should there be any rejection of delivered published materials which do not meet the requirements of the amended policy. When such a rejection occurs, both the inmate and the publisher will be notified of the rejection in writing and the reasons for such rejection. It will be the inmate's sole responsibility to contact the publisher or vendor for reimbursement of any funds advanced for such rejected materials. The amended policy also provides a procedure for a written appeal of each rejection which may be submitted to the Director of Detention within fifteen business days of the rejection. Such an appeal must be in writing on the approved grievance form provided at the Defendant's facility with the Director of Detention making the final decision on all appeals.

9.      It is also pointed out in the pleadings as well as within the amended policy that mail from "news media" is considered privileged mail under subparagraph (D) of the amended policy. As the pleadings indicate, the Defendant considers correspondence in letter form from the Plaintiff or similar news media/publishers to be privileged mail within

4

this exception.  Under the privileged mail procedures, that mail need not be in the form of a postcard.  Any incoming privileged mail shall be opened only to determine that it is privileged and contains no contraband, as this Court previously recited.  Further, the mail must be opened in the presence of the inmate.

        10.     Also attached to the pleadings are an Unsworn Declaration by the Plaintiff's expert and an Affidavit from the Defendant's expert concerning these issues.  Michael Berg provided an Unsworn Declaration which the Plaintiff attaches to its pleadings.  This Court will summarize the pertinent portions of that Unsworn Declaration now.

        a.     Mr. Berg began as a Corrections Officer in 1972 in Jacksonville, Florida.  He was Chief of Jails from 1977 to 1987.  He was Deputy Director of Jails and Prisons from 1987 to 1995 for the Jacksonville Sheriff.

        b.     He served twelve years in the Florida Department of Corrections as Chief of Staff overseeing staff education and training.

        c.     He then became Executive Assistant to the Assistant Deputy Secretary of Institutions.  For twenty-five years he served on the Correctional Standards Council and Criminal Justice Standards and Training Commission.

        d.     Mr. Berg asserts that the postcard only policy unnecessarily limits inmate opportunities to engage in lawful and routinely accepted correspondence and reading materials.

        e.     He asserts phone calls and visits do not adequately serve as a substitute.  One inmate reading another inmate's postcard could create a security concern.

        f.     He asserts that the Defendant's reasons for the postcard only policy to prevent introduction of contraband and to conserve resources is not sufficient to support

such a policy.  He asserts that the Florida Department of Corrections and the Federal Bureau of Prisons allow inmates to receive letters, books, and magazines.  He asserts that the cost savings to staff is minimal and even so, does not outweigh the inmates having communication with friends and family to be so restricted.

g.      He asserts that if mail is rejected, there is no hardship to provide written notice to the inmate and sender to allow both to challenge the decision.

h.      He asserts that the Florida Department of Corrections has over 100,000 persons in custody and allows letters and periodicals.  He asserts that the Federal Bureau of Prisons has in excess of 208,000 persons in custody and allows such letters and publications.

i.      Finally, he asserts that the Florida Sheriff's Association encourages correspondence and does not prohibit publications or volumes of mail.

11.     The Defendant attaches an Affidavit from F. Patrick Tighe to its pleading. This Court will likewise summarize the pertinent portions of that Affidavit now.

a.      He has been employed by the St. Lucie County Sheriff's Office for approximately twelve years.  He has thirty-three years of experience in corrections which include over twenty years with the Brevard County Sheriff's Office where he was Director of the Department of Corrections from 1999 to 2002.  He is currently the Director of the Department of Corrections with the St. Lucie County Sheriff's Office.

b.      Mr. Tighe's Affidavit asserts that the mail policy is necessary to ensure that the mail gets to the proper inmate.  All mail is opened, inspected, and monitored to ensure that no contraband is contained in any envelopes.  Further, it is checked for any

6

coded messages, gang affiliations, security threats, or other material which may disrupt or potentially disrupt the facility.

        c.      Legal mail is opened and inspected in the presence of the inmate to determine if it is privileged and contains no contraband.  Six staff members are assigned to process mail which Mr. Tighe estimates to be between 10,000 to 12,000 letters per month.

        d.      The postcard only policy has greatly reduced the number of letters being processed.  The policy applies only to non-privileged mail.

        e.      The policy was implemented as a means to address daily concerns of potentially hazardous and dangerous materials which could be contained in envelopes such as drugs, tobacco, money and other contraband which were common to be found in envelopes prior to the policy being initiated.

        f.      Mr. Tighe asserts that the policy has resulted in a significant decrease in contraband introduction into the facility.  It has eliminated having to take time to inspect envelopes and made the inspection process easier in respect to checking for such contraband referenced by his Affidavit.

        g.      Mr. Tighe asserts that the facility allows two hours per week for visitation with an inmate and their friends and family.  Further, an inmate has daily use of the telephone.  These are alternatives to communication which are in addition to written communication in accordance with the postcard only policy.

        h.      His Affidavit then closes with the assertion that this is the least restrictive means to address the legitimate security concerns at the facility.

7

12.     As referenced earlier, subsequent to the filing of this action, the Defendant changed the policy concerning postcards, magazines, periodicals, and media mail which is considered privileged. The Defendant asserts that this makes the issue moot in respect to the Plaintiff's request. The Plaintiff denies that the matter is moot and asserts in support of that argument that the policy could be changed again if a preliminary injunction is not granted while this action is pending.

## ANALYSIS

13.     This Court does not see the need for an evidentiary hearing. There is no per se requirement for an evidentiary hearing on a motion for preliminary injunction. McDonald's Corp. v. Robertson, 147 F.3d 1301 (11th Cir. 1998). The policy and amended policy are what they are. While the parties have different inferences and draw different inferences and arguments in respect to the policies, there is no dispute as to what the original policy and the amended policy are at this time. Additionally, the Unsworn Declaration and the Affidavit are accepted by this Court as evidence of each party in support of their relative positions.

14.     The issue of whether or not a preliminary injunction should be issued is a legal issue based upon the facts before the Court, which this Court finds to not be hotly disputed. The mere fact that each party draws inferences or suggests arguments from their particular position, does not require an evidentiary hearing to be conducted. The issue is whether or not, in a preliminary fashion, the policy and amended policy violate the established case law. As such, this Court views the issue of a preliminary injunction to turn on a question of law which does not require this Court to conduct an evidentiary hearing.

8

United States v. Lopez, 466 Fed. Appx. 829 (11th Cir. 2012) and Cumulus Media, Inc. v. Clear Channel Communications, Inc., 304 F.3d 1167 (11th Cir. 2002).

15.     The Court has reviewed the cases cited by the parties in their pleadings as well as some which have been attached to the pleadings.  This Court finds most persuasive and factually on point, Judge Marra's decision in Althouse v. Palm Beach County Sheriff's Office, 2013 WL 536072 (S.D. Fla. 2013).  In that case, Judge Marra was reviewing by way of summary judgment motions, the postcard only policy of the Palm Beach County Sheriff's Office.  In that case, there was a virtually identical policy in place where all incoming mail, except legal mail and other specifically approved items, must be in the form of a postcard.  It should be noted that the defendant's policy in Althouse did permit publishers to deliver books, papers, magazines and other periodicals to the jail similar to the amended policy in place now in the case before this Court.

16.     Just as in this case, the Palm Beach County Sheriff's Office permitted inmates to have visits with family and friends and have access to telephones for unlimited calling and to receive an unlimited amount of written correspondence as long as it complied with the postcard only policy.

17.     Just as in this case, the Palm Beach County Sheriff's Office justified its policy as relating to legitimate penological interest based upon the standards set forth by the Supreme Court in Turner v. Safley, 482 U.S. 78 (1987).  Affidavits submitted in support of the Palm Beach County Sheriff's Office position asserted that policy was to intercept contraband such as drugs, tobacco, money, and other contraband that may be secreted within pages of correspondence within envelopes.  The affidavit in that case also asserted

that the incidents involving attempts to introduce contraband were greatly diminished after the introduction of the postcard only policy.

18.     Judge Marra reviewed the factors established in Turner, supra, for analysis of the underlying facts in his case.  Judge Marra also noted the constitutional rights of prisoners are more limited in scope than the constitutional rights held by individuals in society at large.  In regards to a First Amendment context, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system.  In applying the Turner factors, Judge Marra found that sealed envelopes provided greater opportunity for the introduction of drugs and other contraband into the jail facilities than do postcards since postcards have no folds or creases wherein such matters could be secreted.  He also noted that the policy in place at the Palm Beach County Sheriff's Office permitted publishers to deliver books, papers, magazines, and other periodicals, just as is in this case before the Court under the amended policy adopted by the Defendant.

19.     The second Turner factor that Judge Marra addressed was the alternative means of communication available to inmates.  Just as in the case before this Court, the Palm Beach County Sheriff's Office permits inmate visits with family and friends, telephone calls, and unlimited correspondence within the restrictions of the postcard only policy.

20.     The third Turner factor addressed by Judge Marra was whether or not the plaintiff's asserted right would be detrimental to prison security.  The plaintiff in Althouse argued that since staff was still opening and inspecting other privileged mail, that was exempt from the postcard policy, there would be no impact on the staff if they were required to accommodate the plaintiff's request to permit correspondence in envelopes.

10

Judge Marra specifically rejected that premise by finding that increasing the opportunity for contraband to be introduced into the sheriff's office facilities is not in the best interests of the security staff, other inmates, or the allocation of prison resources.  This Court agrees with that analysis and finds that the same holds true in respect to the facts in this case.

21.     Finally, Judge Marra found that the postcard only policy of the Palm Beach County Sheriff's Office was not an exaggerated response to the legitimate concerns to the penological goal of intercepting possible contraband which was being attempted to be introduced into the jail facility.  Likewise, in this case, this Court finds that the Defendant's postcard only policy as it relates to general and personal correspondence is so justified. In summary, Judge Marra found, without the necessity of an evidentiary hearing, that the defendant's motion for summary judgment be granted because the postcard only policy was content neutral, logically advanced the goals of institutional security and safety, and is not an exaggerated response to those objectives.

22.     In applying the Turner factors to this case before the Court, this Court agrees with Judge Marra's analysis in Althouse.  In respect to the facts before this Court, the postcard only policy is rationally connected to prison security based upon the affidavit submitted in support of the Defendant's position.   Postcards do not easily secret contraband even if postage stamps or other stamps must be removed to make certain that drugs are not hidden below those stamps. The Plaintiff is excepted from the postcard only policy under the amended policy enacted by the Defendant.  The Plaintiff is permitted to deliver books, papers, magazines, periodicals, and even correspondence in envelopes as privileged mail under this amended policy. This is consistent with the facts in the Althouse case.

23.    The second Turner factor concerning an alternative means of communication for inmates at the Defendant's facility, weighs in favor of the Defendant.  Inmates at the Defendant's corrections facility are permitted visits with family and friends.  They are permitted telephone calls and unlimited correspondence as long as it complies with the postcard only policy.

24.    The third Turner factor addresses the Plaintiff's asserted right and whether or not that would be detrimental to prison security.  Based upon the entire record before the Court including the Unsworn Declaration of the Plaintiff's expert and the Sworn Affidavit of the Defendant's expert, this Court finds that the fact that staff are still required to open magazines, periodicals, books, or other privileged mail, such as legal mail or mail from news media, does not in and of itself justify increasing the work of that staff to open envelopes of general and personal correspondence.  As Judge Marra found, increasing the opportunity for contraband to be introduced into the Defendant's correctional facility by allowing general and personal correspondence to be contained within envelopes, is not in the best interests of the security staff of the Defendant, other inmates at the Defendant's facility, or the allocation of prison resources.

25.    The final Turner factor addresses whether or not this is an exaggerated response to the Defendant's concerns of introduction of contraband.  This Court has considered the Unsworn Declaration of the Plaintiff's expert, but finds that the postcard only policy as discussed in the pleadings and the Defendant's expert's Affidavit reasonably relate to legitimate attempts to avoid the secreting of contraband in pages within envelopes.  Common sense would dictate that it is much easier to attempt to smuggle contraband into the Defendant's facility within an envelope as opposed to a postcard.

Therefore, this Court finds that the Defendant's postcard only policy is not an exaggerated response to the previous history of finding contraband hidden within envelopes sent to inmates at its facility.

26.     The standard which this Court must follow in determining whether to grant a preliminary injunction is well established. A court may grant injunctive relief if the movant shows (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) a threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. See McDonald's Corp., supra.

27.     This Court finds that the Plaintiff does have standing to continue to challenge the postcard only policy even as amended, in respect to its communications with inmates. Standing is determined as having a personal interest that must exist at the commencement of the litigation. However, this Court also notes that to qualify, an actual controversy must exist at all stages of review and not merely at the time a complaint is filed. Davis v. Federal Election Commission, 554 U.S. 724 (2008). This Court finds that the Plaintiff does have standing at the time of the commencement of this action and for any prospective injury that may result in respect to correspondence it specifically has between itself and inmates. This would include magazines, books, periodicals, and other correspondence which the amended policy now exempts as privileged mail.

28.     This Court does not see the Plaintiff as having standing to challenge general correspondence or personal correspondence to any inmate other than correspondence between the Plaintiff and that inmate. The Plaintiff cannot establish standing in respect to that general correspondence or personal correspondence which may be between third

parties and an inmate.  There must be a causal connection between the injury and the conduct complained of.  As such, the Plaintiff cannot assert rights on behalf of other inmates which do not directly impact the Plaintiff's distribution of its materials.  See Bass v. Singletary, 143 F.3d 1442 (11th Cir. 1998) and Adams v. James, 784 F.2d 1077 (11th Cir. 1986).   This Court cannot see how the Plaintiff can stand in the shoes of an inmate in respect to correspondence which is not correspondence from the Plaintiff to an inmate. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263 (11th Cir. 2003).  As a result, this Court is only going to address the issues concerning the incoming mail policy and the amendment thereof as it relates to the Plaintiff's justiciable case in controversy which this Court sees to be any communications by mail between the Plaintiff and an inmate.  The Plaintiff does not assert that it is an organization representing any particular inmate nor does it assert that any inmate is a member of the Plaintiff.

29.    In respect to mootness, the amendment of the policy did not in and of itself make moot the issues relevant to the Plaintiff's claims in respect to its mail communications with any inmate.  This Court disagrees with the Defendant's assertion in that regard.  A case may become moot based upon a defendant's voluntary conduct if subsequent events make it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.  Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167 (2000).  Further, the Court in Friends of the Earth, Inc. stated that it is a heavy burden of persuading a court that the challenged conduct cannot reasonably be expected to start up again.  This burden is on the party asserting mootness.

30.    This Court finds that the amended policy could be changed during the pendency of this litigation before a final determination on permanent injunction and/or other

relief is decided by the District Court.  This Court reminds the parties that this issue before the Court is only on a preliminary injunction and is not the final outcome of the litigation. Since the amended policy could be changed tomorrow by the Defendant, this Court finds that the amended policy is capable of repetition evading review before the final outcome of this litigation.  The "capable of repetition, yet evading review" exception to the mootness doctrine applies only where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.  See Arcia v. Florida Secretary of State, 2014 WL 1284907 (11th Cir. 2014).  This Court finds that the amended policy could be changed.  It has only been amended since January of 2014.  Its effect on the outcome of this litigation is still open to determination by the Court after the parties have completed discovery and presented all evidence and arguments to the finder of fact. This Court finds that the mootness doctrine does not apply since the amended policy has been of such a short duration and is subject to being changed at any time.

31.    Since the amended policy is found by this Court to not be moot, this Court will recommend that a preliminary injunction be entered by the District Court to maintain the amended policy as it relates to the Plaintiff's communications with inmates, during the pendency of this case.  The amended policy exempts the Plaintiff's communications and correspondence with any inmate at the Defendant's facility whether that correspondence be by way of books, periodicals, magazines, or by way of privileged mail.  The amended policy allows such correspondence to be sent to inmates.

32.     In reviewing the preliminary injunction requirements, this Court finds that a preliminary injunction should be granted in respect to the amended policy adopted by the Defendant as it affects the Plaintiff's correspondence with inmates via books, periodicals, magazines, and privileged mail via envelopes.  This Court finds that the Plaintiff has established a substantial likelihood of success on the merits in respect to that amended policy. The Plaintiff has established irreparable injury if no injunction is issued to keep the amended policy in effect during the pendency of this litigation.  The threatened injury to the Plaintiff outweighs whatever damage the proposed injunction may cause the opposing party in this instance since the amended policy has already been implemented and the Plaintiff should be able to immediately avail itself of communications with inmates under that amended policy.  The damages to the Plaintiff should this policy be reversed during the pendency of this litigation, outweighs the damage which such an injunction would cause to the Defendant.  Finally, any preliminary injunction issued in respect to the Plaintiff's communications only with inmates would not be adverse to the public interest.

33.     In determining that a preliminary injunction should not be granted in respect to the postcard only policy in general or in respect to any other communications aside from those between this Plaintiff and inmates, this Court finds that there is not a substantial likelihood that the Plaintiff will prevail in respect to general correspondence or personal correspondence.  This is based upon this Court's finding that the Plaintiff cannot assert rights on behalf of inmates. The Plaintiff can only assert rights on behalf of itself in respect to its communications with inmates in the Defendant facility.  The Plaintiff is not able to establish a substantial likelihood of success on the merits in respect to asserting rights of inmates.  There would be no irreparable injury to the Plaintiff should an injunction not be

16

issued in respect to the postcard only policy in general since the Plaintiff cannot assert rights on behalf of inmates. Likewise, any threatened injury to the Plaintiff, which has now been addressed by the amended policy and this Court's recommendation of a preliminary injunction in that regard, do not outweigh the interests of the Defendant in maintaining the postcard only policy in respect to inmate general correspondence and personal correspondence as stated by this Court previously in its finding. Finally, issuing a preliminary injunction in respect to the postcard only policy which would allow the Plaintiff to assert personal rights on behalf of an inmate would be adverse to the public interest in this Court's view. The Plaintiff, as the case law cited herein indicates, can assert rights that it has itself in respect to the issues addressed by the policy. That is, in respect to its correspondence with inmates directly. The Plaintiff cannot assert rights nor injury outside of its own communications with inmates.

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Motion For Preliminary Injunction [D.E. #4] be **GRANTED** IN PART only insofar as the amended policy instituted by the Defendant during the pendency of this litigation shall remain in full force and effect during this litigation and that all correspondence including books, periodicals, magazines, and correspondence by envelope which is considered privileged mail between the Plaintiff and inmates shall be considered an exception to the postcard only policy. This Court recommends that the Plaintiff's Motion For Preliminary Injunction be **DENIED** in all other respects.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E.

Martinez, the United States District Judge assigned to this case.  Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein.  LoConte v. Dugger, 847 F.2d 745, 749-50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** this _____ day of April, 2014, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:
Hon. Jose E. Martinez
Dante P. Trevisani, Esq.
Lance T. Weber, Esq.
Bruce W. Jolly, Esq.

18